# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MATTHEW QUIGLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 11 C 9279 |
| MARCUS HARDY, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Matthew Quigley, a prisoner in the Illinois Department of Corrections (IDOC), has filed a *pro se* lawsuit under 42 U.S.C. § 1983. He alleges that Marcus Hardy, the warden of Stateville Correctional Center, violated his Eighth and Fourteenth Amendment rights. Hardy has moved for summary judgment, arguing that Quigley failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA). For the reasons stated below, the Court denies Hardy's motion.

## Background

Quigley is currently an inmate at Pontiac Correctional Center. He was previously incarcerated at the Stateville Correctional Center. Quigley alleges that the conditions of his confinement at Stateville violated the Eighth Amendment's prohibition against cruel and unusual punishment. Hardy was the warden at Stateville during the relevant period.

IDOC has a three-step procedure for inmates to file grievances, which is set forth

in regulations published in the Illinois Administrative Code. *See* Ill. Admin. Code §§ 504.800 – 504.870. The first step requires an inmate to attempt to resolve his grievance through his counselor. *Id.* § 504.810(a). If this does not resolve the problem, then the inmate may, within sixty days of the incident giving rise to the grievance, submit a grievance form including the factual details of the inmate's complaint. *Id.* § 504.810(a)-(b). A prison employee serving as a grievance officer considers the grievance and reports his or her findings and recommendations to the "Chief Administrative Officer," namely, the prison warden. *See id.* § 504.830. The warden is required to advise the offender of his or her decision in writing within two months after receipt of the written grievance. *Id.* § 504.830(d).

If the inmate disagrees with the warden's decision, he may, as a third step, appeal in writing to the Director of IDOC within thirty days. *Id.* § 504.850(a). If the Director determines a grievance is meritless or does not require further consideration, the Director so advises the inmate. *Id.* § 504.850(b). Otherwise, the grievance is submitted to the Administrative Review Board (ARB). *Id.* The ARB considers the grievance, may conduct a hearing, and submits a report to the Director. *Id.* § 504.850(e). The Director reviews the ARB's report and makes a final determination. *Id.* § 504.850(f). A copy of the ARB's report and the Director's decision are sent to the inmate. *Id.*

In an emergency situation, an inmate may bypass the ordinary three-step grievance procedure and request expedited review of his grievance by submitting the grievance directly to the prison warden. *Id.* § 504.840. If the warden "determines that there is a substantial risk of imminent personal injury or other serious or irreparable

harm" to the inmate, the grievance is handled on an emergency basis. *Id.* § 504.840(a). The applicable provision of the Illinois Administrative Code does not describe anything more an inmate is required to do if the CAO declines to handle the grievance on an emergency basis. *See id.* That said, section 504.850 of the Code, entitled "Appeals," would appear to prescribe for denial of an emergency grievance the same internal appeal process – namely, to the ARB – that applies to ordinary grievances. *Id.* § 504.850.

On June 1, 2011, Quigley submitted an emergency grievance form regarding the conditions of his confinement. He alleged the following: (1) inadequate cleaning supplies to clean his cell; (2) lead paint present in the cell; (3) condensation pockets in the cell house that exposed him to poisonous or toxic chemicals; (4) flammable and toxic paint; (5) foul air that caused respiratory problems; (6) pest infestation; (7) broken windows and windows with screens; (8) cell floor and windows covered in bird waste; (9) cell houses full of birds; (10) cell house lights on twenty-four hours a day; (11) "double man" cells, with two inmates to some cells; (12) inadequate cell size; (13) covered vents; and (14) unfiltered water containing high chemical levels. Warden Hardy reviewed Quigley's grievance because he submitted it as an emergency grievance. On June 9, 2011, Hardy concluded that Quigley's grievance was not an emergency and sent Quigley notice of the decision. Hardy checked off a box on the form that stated, "an emergency is not substantiate. Offender should submit this grievance in the normal manner." Def.'s Stat. of Facts, Ex. F.

On June 15, 2011 and July 22, 2011, Quigley filed two more grievances regarding the same conditions described in his first grievance. He filed both grievances

on an emergency basis. Hardy also concluded that these grievances were not real emergencies and checked off the same box on the grievance forms. On August 24, 2011, the second and third grievances were returned to Quigley, along with Hardy's decision that both were non-emergency grievances.

On September 7, 2011, the ARB received copies of Quigley's three emergency grievances and a request for relief. On September 13, 2011, Sherry Benton, the chair of the ARB, responded to Quigley's appeal. Benton stated that the appeal was deficient because it was not accompanied by the required "Committed Person's Grievance Report," which includes a grievance officer's report and a warden's response. In addition to the formal written response and instruction on the grievance process, Benton included a handwritten note stating, "when you receive a finalized grv. officer's report to [the three grievances], then submit. Please be patient." Def.'s Stat. of Facts, Ex. I. In essence, Benton was telling Quigley to resubmit his grievance via the ordinary, non-emergency process. Quigley took no further action through the grievance system and instead filed the present lawsuit.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l–Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). When considering a motion for summary judgment, a court takes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

4

Hardy argues that Quigley failed to comply with the requirements of Local Rule 56.1. Even if correct, the law is clear that a court may overlook noncompliance with the Local Rule. *See, e.g.*, *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011). The Court will do so here, for two reasons: Quigley is a *pro se* litigant, and the issues have been presented clearly enough that it would serve no useful purpose to enforce the Rule literally.

Under the PLRA, "no action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Pavey v. Conley,* 528 F.3d 494 (7th Cir. 2008). If a prisoner fails to exhaust his administrative remedies before filing suit, the district court must dismiss the complaint without reaching the merits. *See Perez v. Wisconsin Dep't of Corrs.,* 182 F.3d 532, 535–36 (7th Cir. 1999).

To exhaust administrative remedies, an Illinois prison inmate is required to follow the regulations contained in the IDOC's "Grievance Procedures for Offenders," as codified in the Illinois Administrative Code. The Court reviewed these regulations in detail earlier in this decision.

Hardy contends that Quigley failed to exhaust his available remedies under the IDOC's grievance process because he did not submit his grievance, under standard non-emergency procedures, after his "emergency" grievances were found not to constitute emergencies. Specifically, Hardy argues Quigley was required to resubmit his grievances using the usual three-step, non-emergency process.

The problem with Hardy's argument is that the text of the established grievance

5

procedure published in the Illinois Administrative Code does not require an inmate whose grievance is denied emergency treatment to go back to square one. For this very reason, the Seventh Circuit has rejected the very argument Hardy makes here, as have other district judges within this Circuit. See *Thornton v. Snyder*, 428 F.3d 690, 696–97 (7th Cir. 2005) (regulatory text does not require inmates to file new grievances after being denied emergency treatment); *Glick v. Walker*, 385 F. App'x 579, 583 (7th Cir. 2010) (inmate not required to resubmit grievance through normal channels after warden finds expedited review unnecessary); *Muhammad v. McAdory*, 214 F. App'x 610, 612–13 (7th Cir. 2007) (inmate not required to resubmit grievance through standard procedure after warden concluded it was not an emergency); *Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *8 (N.D. Ill. June 5, 2013) (holding that inmate fully exhausted his administrative remedies using the emergency grievance process set forth by the Illinois Code and declining to impose an additional resubmission step, as required by Stateville practice); *Dixon v. Schaefer*, No. 11 C 6860, 2013 WL 941971, at *3 (N.D. Ill. Mar.11, 2013) (inmate not required to resubmit grievance through normal IDOC grievance process after being denied emergency treatment, finding that "[a]lthough the grievance form directed inmates to submit a regular grievance if no emergency grievance had been substantiated, the governing regulations themselves do not dictate such a requirement"); *Johnson v. Ghosh*, No. 10 C 6897, 2011 WL 2604837, at *4 (N.D. Ill. June 30, 2011) (inmate who files emergency grievance has no obligation to resubmit the grievance through normal channels after warden determines the grievance does not warrant expedited review); *Walker v. Mahone*, No. 09-1128, 2010 WL 5071571, at *3 (C.D. Ill. Dec. 8, 2010) ("The Defendant fails to acknowledge

*Thornton* and provides no evidence in support of her claim that the [p]laintiff had to resubmit her grievance [after warden determined that emergency review was not substantiated]."); *Cooper v. Evans*, No. 08-cv-0742-MJR-CJP, 2010 WL 3895702, at *3 (S.D. Ill. Sept. 29, 2010) (inmate who seeks emergency review under § 504.840 has no obligation to resubmit the grievance through normal channels).

Indeed, controlling authority forecloses Hardy's arguments. For example, in *Thornton*, the defendant argued that emergency grievances filed by the inmate-plaintiff "ceased to exist" once corrections officials deemed the grievance a non-emergency. *See Thornton*, 428 F.3d at 694. Like the response Quigley received from the ARB in this case, the response the plaintiff in *Thornton* received from the warden "made no comment on the merits of the grievance and indicated only that the warden did not consider the complaint worthy of emergency treatment." *Id.* The Seventh Circuit flatly rejected the defendants' non-exhaustion argument, finding "nothing in the current regulatory text [. . .] that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis." *Id.* The regulatory text to which the Seventh Circuit referred in *Thornton* exists to this day; it has not been changed in any way that would require an inmate in Quigley's position to start the grievance process over from scratch.

Quigley's situation is likewise similar to that of the inmate-plaintiff in *Glick*, who filed several emergency grievances, all of which the warden deemed to be "non-emergencies." *See Glick*, 385 F. App'x at 583. The plaintiff appealed the warden's decision to the ARB, which agreed with the warden and instructed the plaintiff to restart the entire process by submitting his grievance to his institution's grievance officer. *Id.*

In response to the defendants' argument that the plaintiff failed to exhaust his administrative remedies, the Seventh Circuit stated:

> The defendants' position that [the plaintiff] was required to go back to the grievance officer and start over after his emergency grievance had been rejected by the warden and the ARB is at odds with 20 Ill. Admin. Code § 504.840 and *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). In *Thornton*, . . . we explained that an inmate who seeks emergency review under § 504.840 has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary. The defendants cannot use the exhaustion requirement to demand that an inmate do more than what the administrative rules require.

*Id.*

In support of his motion for summary judgment, Hardy submitted an affidavit from Sherry Benton, the chair of the ARB, who states that inmates are required to resubmit grievances through the non-emergency process in the event that their emergency grievance is denied. This purported requirement can be found nowhere in the published grievance regulations. In *Mims*, Judge Kendall rejected an identical argument. *See Mims*, 2013 WL 2451149, at *7. This Court agrees. As discussed above, the Seventh Circuit has made clear that prison officials cannot require inmates to do more by way of exhaustion than what the Illinois Administrative Code provides. *See Glick*, 385 F. App'x. at 583. "[P]rison administrators may not frustrate an inmate's efforts to comply with the administrative review process by imposing hurdles that are not part of the established grievance procedure." *Muhammad*, 214 F. App'x. at 613.

In short, controlling authority completely undermines Hardy's argument. Hardy – who like the defendants in *Thornton* and *Glick* is represented by the Illinois Attorney General – not only made an argument contrary to these binding precedents; his attorney did not even bother to cite them. The Court has the right to expect better from

8

Illinois' chief legal officer and her assistants.

## Conclusion

For the reasons stated above, the Court denies defendant's motion for summary judgment [docket no. 63]. The case is set for a status hearing on November 14, 2013 at 8:45 a.m. Defense counsel is directed to make arrangements for plaintiff to participate by telephone. At the status hearing, the Court intends to discuss the possibility of settlement and may set the case for a settlement conference to be held at a later date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 24, 2013